WEST SHORE COMMUNITY COLLEGE v MANISTEE COUNTY
BOARD OF COMMISSIONERS

1. ELECTIONS—BALLOT PROPOSAL—LEGISLATURE—CONSTITUTIONAL
   LAW—DUE PROCESS.
   The fact that a misleading ballot proposal was framed by the
   Legislature would not place it outside the strictures of due
   process; where a ballot proposal is misleading, the remedy is to
   void the election.

2. TAXATION—COLLEGES AND UNIVERSITIES—COMMUNITY COLLEGE ACT
   —TRUSTEES—VOTED LIMITATION—BONDS—PRINCIPAL—INTEREST
   —CONSTITUTIONAL LAW.
   The power of the board of trustees of a community college to levy
   a tax which shall not exceed the rate authorized by the electors
   is subject to the exception that taxes levied to pay the principal
   and interest on bonds may be imposed without limitation as to
   rate or amount (Const 1963, art 9, § 6; MCLA 389.144).

3. TAXATION—COLLEGES AND UNIVERSITIES—COMMUNITY COLLEGES—
   TRUSTEES—DEBT SERVICE—CONSTITUTIONAL LAW—VOTED MIL-
   LAGE LIMITATIONS.
   Unless the fiat of the trustees of a community college as to the
   purpose of a levy of a tax to pay its debt service is to be given
   constitutional status, the true or actual purpose of a proposed
   levy, alleged to be imposed for payment of debt service, must be
   determinative of the validity of such tax, at least to the extent
   that it exceeds voted millage limitations.

4. TAXATION—COMMUNITY COLLEGE ACT—CONSTITUTIONAL LAW—MIL-
   LAGE LIMITATIONS—DEBT SERVICE EXCEPTION—BONDS.
   The constitutional and statutory exception to millage limitations,
   permitting taxes to be imposed without limitation as to rate or
   amount for payment of debt service were designed and in-

REFERENCES FOR POINTS IN HEADNOTES
[1] 26 Am Jur 2d, Elections § 221.
[2–4, 8, 9] 51 Am Jur, Taxation § 345.
[5] No references.
[6] 64 Am Jur 2d, Public Securities and Obligations § 399 *et seq.*
[7] 51 Am Jur, Taxation § 650.

tended to assure good faith purchasers of community college obligations that such obligations will be repaid; without such assurance, bonds would be difficult to sell, credit would be hard to come by, and even if an additional levy were permitted in case of default, potential bond purchasers would be wary; banks do not ordinarily like to buy lawsuits (Const 1963, art 9, § 6; MCLA 389.144).

5. MUNICIPAL CORPORATIONS—MUNICIPAL FINANCE ACT—BORROWING —DISCHARGE OF DEBTS—MUNICIPAL FINANCE COMMISSION.

The thrust of the Municipal Finance Act is to assure that Michigan municipalities borrow only for provident purposes and provide for the discharge of their just debts in an orderly and businesslike manner; borrowing must be approved by the Municipal Finance Commission, and provision for repayment must be made by responsible officials in accordance with the Act (MCLA 131.1 *et seq.*).

6. MUNICIPAL CORPORATIONS—MUNICIPAL FINANCE ACT—BONDS—TAX- ATION—MUNICIPAL FINANCE COMMISSION—DEBT RETIREMENT— DEBT SERVICE REQUIREMENTS—BOARD OF COMMISSIONERS—DI- RECTOR OF EQUALIZATION.

Municipal Finance Commission, by statute, is authorized to notify the county treasurer that a municipality's bonds are "retired or that the debt retirement fund is of sufficient amount to retire the bonds", whereupon the treasurer is no longer required to recognize a levy for the bond issue; given that specific authority and duty it is not to be supposed that the commission is empowered to prevent the imposition or collection of a tax before the debt is retired or its retirement secured, even though the commission may be of the opinion that the tax is not necessary to meet current debt service requirements; neither is there statutory authority for the county commissioners or the director of equalization to sit in judgment upon the necessity of a debt levy (MCLA 137.1c).·

7. TAXATION—BONDS—PRINCIPAL—INTEREST—CONSTITUTIONAL LAW— COURTS.

A tax levy if it is legal and constitutional if imposed to pay the principal and interest on bonds, and illegal and unconstitu- tional if not imposed to pay the principal and interest on bonds, and the legality of the tax is challenged in a proper action, it is the duty of the court to decide the disputed question.

8. COLLEGES AND UNIVERSITIES—TRUSTEES—PUBLIC OFFICERS—PRE- SUMPTIONS—COURTS.

Community college trustees, like all public officers, are presumed

to act in accordance with the law; they are elected to operate their community colleges and the courts should presume that they have the requisite expertise to do what the voters have elected them to do.

9. TAXATION—COLLEGES AND UNIVERSITIES—TRUSTEES—BURDEN OF PROOF—DEBT SERVICE.

Trustees of a community college should not be obliged to carry the burden of proving that a desired over-levy of taxation is to pay debt service; the burden of proof should fall upon the opponents of the levy, to show that the non-voted millage is not in fact imposed for the purpose of paying debt service, but is, in reality and in spite of all presumptions to the contrary, an imposition, the principal thrust of which is to achieve some goal other than payment of debt service.

Appeal from Manistee, Charles A. Wickens, J., and from Court of Appeals prior to decision. Submitted January 3, 1973. (No. 2 January Term 1973, Docket Nos. 53,910–53,911.) Decided March 27, 1973.

Complaints by West Shore Community College against the Manistee County Board of Commissioners and Equalization Director, and the Mason County Board of Commissioners and Equalization Director for declaratory judgments that it was entitled to levy .3 of one mill in ad valorem taxes to pay debt service and for an injunction restraining defendants from spreading taxes without including the requested .3 of one mill. The Attorney General intervened. Cases consolidated for trial. Judgment for defendants. Plaintiff appealed to the Court of Appeals. Plaintiff appealed to the Supreme Court for leave to appeal prior to decision by the Court of Appeals. Leave granted. Remanded for new trial.

*Miller, Canfield, Paddock & Stone* (by *Robert E. Hammell* and *Gilbert E. Gove),* for plaintiff.

*Robert Andrews,* Prosecuting Attorney, for Mason County Board of Commissioners and Equalization Director.

*Dennis Keleher,* Prosecuting Attorney, for Manistee County Board of Commissioners and Equalization Director.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Maxine Boord Virtue,* Assistant Attorney General, for the people.

T. E. BRENNAN, J.

## SUBJECT MATTER

We here consider the extent of the power of a community college to require the levy of ad valorem property taxes for payment of debt service.

## APPELLATE POSTURE OF THE CASE

Plaintiff commenced two actions for declaratory judgment, one in Manistee County against that county's board of commissioners and equalization director, and one in Mason County against the same officers there. The two actions were consolidated and were heard by the circuit judge in Manistee County.

Plaintiff's complaint sought a declaration that it was entitled to levy .3 of one mill in ad valorem taxes to pay debt service, and prayed for an injunction restraining defendants from spreading taxes without including the requested .3 of one mill.

The circuit court declined to grant the relief requested.

On February 18, 1972, we granted plaintiff's application for leave to appeal prior to decision of the Court of Appeals.

## THE FACTS

Plaintiff West Shore Community College is a body corporate and politic, being a community college district organized under the Community College Act of 1966, MCLA 389.1 *et seq.;* MSA 15.615(101) *et seq.* It comprises the intermediate school districts of Mason and Manistee Counties, and traces its creation to an affirmative vote of the electors on March 6, 1967.

In that election, the following propositions were approved:

"1. Shall a community college district comprised of Manistee Intermediate School District and Mason Intermediate School District be established in accordance with 1966 PA 331?

"2. Shall the board of trustees of the proposed community college district comprised of Manistee and Mason Intermediate School Districts be authorized to levy a tax on the real and tangible person property within the district not to exceed the annual rate of one and one-half (1-1/2) mills on each dollar ($1.50 on each $1,000) of the assessed valuation, as equalized, of the property within the district in the manner and for the purposes provided by 1966 PA 331?"

Pursuant to the authority of MCLA 389.122; MSA 15.615 (1122), plaintiff issued, without vote of the electors, two series of bonds, amounting in the aggregate to $2,250,000. These bonds were approved, prior to issuance, by the Municipal Finance Commission.

In connection with that approval, the following correspondence was received by the commission:

"West Shore Community College
"Manistee and Mason Counties
"P.O. Box 277, Scottsville, Mich. 49454
"September 9, 1969

"Received
"Dept. of Treasury
"Sep. 11, 1969
"Municipal Finance

"Mr. David N. Jaye, Consultant
"Municipal Finance Division
"Department of Treasury
"Treasury Building
"Lansing, Michigan

"Dear Mr. Jaye:

"Enclosed is material relative to the projected bond issue that was discussed in your office Friday, September 5, 1969. Included is the projected income for a ten (10) year period in chart form. I believe that these projected figures are indicative of a conservative financial approach to projected incomes. Also included is a copy of the 1968–69 audit as prepared by Merskin and Merskin and also materials regarding the Consumers Power Project which is being constructed at the present time.

"On September 11th, at our regular meeting of the Board of Trustees, I have for their approval the recommendation on the establishment of a debt retirement fund.

"We would like priority consideration given to this bonding application so that bidding and construction can commence immediately and also that both State and Federal grants are awaiting our matching funds for these needed college facilities. Both State and Federal matching funds would be in jeopardy if this application was not given processing expeditiously.

"At the present time we do not feel that additional millage would have to be assessed on the constituents of

the College district as the bonded debt requirements can be absorbed into our income schedule as attached.

"If there is additional information needed, please feel free to contact my office and again, thanks for all considerations.

"Sincerely,

"Bob /s/

"Robert D. Bradley

"Dean of Business Services

"Enclosures"

The approval order of the commission stated, *inter alia:*

"5. That the community college district shall not levy for any bond issue to the extent that it has available money in a debt retirement fund for that bond issue.

"6. That during each year in which any of said bonds remain outstanding the community college district levy for debt service such amounts as are required by the Constitution and laws of the State of Michigan."

## PLAINTIFF'S THEORY

Plaintiff argues that it is authorized by the constitution and statutory law of the state to levy ad valorem taxes without limitation as to rate or amount for the purpose of paying the debt service upon its outstanding bonded indebtedness.

It further argues that the defendant counties have a duty to spread such taxes upon the request of the board of trustees of the community college, and that no vote of the people is necessary to authorize such taxes.

Plaintiff cites, as statutory authority, § 144 of the Community College Act of 1966, MCLA 389.144; MSA 15.615(1144), which provides:

"Sec. 144. (1) The board of trustees of each community college district may levy for the purposes specified

as within the power of the board, a tax which shall not exceed the rate which has been heretofore or is hereafter authorized by the qualified electors of the district or the rate derived through the previous adoption by the electors of the district of the provisions of Act No. 188 of the Public Acts of 1955, as amended. The funds may be used for any and all purposes authorized except that the foregoing limitation shall not apply to taxes imposed for the payment of principal and interest on bonds or other evidences of indebtedness or for the payment of assessments or contract obligations in anticipation of which bonds are issued, which taxes may be imposed without limitation as to rate or amount. This limitation may be increased to not more than 5 mills if approved by a majority of the qualified electors voting on the question at any general or special election of the community college district. The board of trustees shall determine the total taxes required for any year and shall certify the approved tax rate to be levied and the amount of taxes to be raised to the proper assessing officer of each city and township in which the territory of the community college district is situated on or before September 1 of each year, except that the board of trustees may provide by resolution that taxes to be raised against property within any city, any portion of which lies within the community college district boundaries, may be levied and collected in the same manner and at the same time as the city taxes. All moneys collected by any tax collecting officer from the tax levied under the provisions of this section shall be returned to the county treasurer who shall pay the taxes so returned forthwith to the community college district."

The constitutional basis for this legislation is imputed to Const 1963, art 9, § 6.

Our opinion in *Butcher v Grosse Ile Twp*, 387 Mich 42 (1972) is cited in support of plaintiff's view.

### DEFENDANTS' POSITION

Defendants point to Const 1963, art 8, § 7, which provides in part:

"The legislature shall provide by law for the establishment and financial support of public community and junior colleges which shall be supervised and controlled by locally elected boards."

Defendants also emphasize that portion of MCLA 389.144, which states:

"(1) The board of trustees of each community college district may levy for the purposes specified as within the power of the board, a tax which shall not exceed the rate which has been heretofore or is hereafter authorized by the qualified electors of the district * * * "

Defendants argue that the electors of the community college district were asked to approve a maximum tax rate for the plaintiff of 1.5 mills; that in approving such rate, the voters had a right to assume that the maximum rate would apply without exception, and since they were asked to vote upon the establishment of the maximum rate, no increase thereof could be imposed without another election.

Defendants further contend that plaintiff's request for .3 of one mill additional levy is not in fact required to pay the debt service upon its outstanding bonded indebtedness, but, in reality, is proposed to be applied toward operating expenses.

The need for the additional levy is spelled out in plaintiff's complaint in this fashion:

"5. That, notwithstanding the most stringent restrictions imposed by its Board of Trustees upon disbursing said funds while erecting, furnishing and equipping said college, as a result of numerous factors, plaintiff has been unable to operate the college and pay its bonded indebtedness without additional funds. The factors creating the problem include:
"A. Severe inflation.

"B. A modification in the state law requiring the college to assume personnel retirement expense, in the approximate sum of $68,000.00, which disbursement had theretofore been paid by the State of Michigan.

"C. A modification in the formula for determining the number of credit hours required in order to be deemed a full-time student—which resulted in a lesser amount of state aid for the college.

"6. That, as a result of the fact that the community college district consists of several precincts, the approximate election expense in order to raise the .3 mill (which will return approximately $62,000.00 to the college district) would be $10,000.00 and, therefore, proceeding with an election to raise such amount became entirely impractical.

"7. That, requiring said additional funds, approximating $62,000.00, in order to meet its bonded indebtedness, the Board of Trustees of plaintiff during August of 1971, in accordance with M.S.A. 15.615(1144), levied .3 of a mill for debt service retirement and, in accordance with the statutory mandate did certify this rate to be levied and the amount of taxes to be raised to the proper assessing officers of each city and township in the territory in which the community college district is situated on or before September 1 of 1971."

## Voter Reliance

Defendants' first argument develops from *Alan v Wayne County,* 388 Mich 210 (1972). There, we held Wayne County's stadium bond issue invalid in part because a statutory notice required to be given to the public was inadequate and misleading. It was there argued that the notice complied with the statutory language. We held that where a statute created a right to petition for a vote on revenue bond issues, and the right to petition was triggered by the statutory notice, that such notice would have to satisfy due process standards, both as to the adequacy of the notice given and the means of its publication.

In this case of West Shore, defendants characterize the notice given to the taxpayers as inadequate and misleading. Plaintiff argues that the ballot proposition was submitted in the precise language required by the statute.

Were we to conclude that the ballot proposal was misleading, the fact that such proposal was framed by the Legislature would not place it outside the strictures of due process.

But the question is not properly before us in these proceedings.

*Alan* dealt with the validity of bonds, and the adequacy of a public notice required to be given in connection with such bonds. It did not deal with the adequacy or accuracy of a proposition on a ballot actually submitted before the voters.

Where a ballot proposal is misleading, the remedy is to void the election. We are not asked to do that in this action. Therefore, we express no opinion as to whether a referendum to establish "a maximum tax rate" is invalid in the absence of some reference to the power to levy taxes for the payment of principal and interest on bonds "without limitation as to rate or amount".

### Tax Limitation Dilemma

In *Butcher,* this Court construed Const 1963, art 9, § 6. We held that the tax limitations of that article were subject to the "nonapplication of limitations" contained in the second paragraph of § 6.

Since almost identical language was used by the Legislature in adopting the Community College Act of 1966, § 144, MCLA 389.144, we are constrained to hold that the power of the board of trustees to levy a tax which shall not exceed the rate authorized by the electors is likewise subject

to the exception that taxes levied to pay the principal and interest on bonds may be imposed without limitation as to rate or amount.

This conclusion, however, does not end our inquiry. Conceding that the plaintiff may levy to pay its debt service does not resolve the question of whether any particular levy is or is not for the purpose of paying the principal and interest on bonds or other evidences of indebtedness or for the payment of assessments or contract obligations in anticipation of which bonds are issued.

The dilemma stems from the fact that the community college also has the authority to pay its debt service out of taxes imposed within the voted millage limitation. Indeed it can pay its debt service out of any funds available, and not entrusted to it for some other purpose.

Unless the fiat of the trustees as to the purpose of the levy is to be given constitutional status, the true or actual purpose of a proposed levy, alleged to be imposed for payment of debt service, must be determinative of the validity of such tax, at least to the extent that it exceeds voted millage limitations.

The constitutional and statutory exception to millage limitations, permitting taxes to be imposed without limitation as to rate or amount for payment of debt service were designed and intended to assure good faith purchasers of community college obligations that such obligations will be repaid.

Without such assurance, bonds would be difficult to sell. Credit would be hard to come by. Even if an additional levy were permitted in case of default, potential bond purchasers would be wary. Banks do not ordinarily like to buy lawsuits.

The quoted language, if it is to have its intended

effect, must be operative before default. It must assure the uninterrupted payment of debt service.

Finally, to complete the dilemma, it must be observed that the more prodigal a community college, the worse its financial plight for whatever reason, the more it needs borrowing power.

## WHO DECIDES THE PURPOSE OF A TAX?

If the trustees' declaration of purpose in imposing a tax to pay obligations is not conclusive, it remains to be determined whether the Municipal Finance Commission, the board of county commissioners, the county equalization director, or the courts are to make the determination of purpose.

The thrust of the Municipal Finance Act (MCLA 131.1 *et seq.;* MSA 5.3188[1] *et seq.)* is to assure that Michigan municipalities borrow only for provident purposes and provide for the discharge of their just debts in an orderly and businesslike manner. Borrowing must be approved by the commission, and provision for repayment must be made by responsible officials in accordance with the Act.

MCLA 137.1a; MSA 5.3188(45a) provides:

"Sec. 1a. Whenever any municipality shall have outstanding any bonds, refunding bonds, notes or certificates of indebtedness payable from taxes, it shall be the duty of every officer or official body charged with any duty in connection with the determination of the amount of taxes to be raised or with the levying of such taxes, to include in the amount of taxes levied each year:

"(a) An amount such that the estimated collections therefrom will be sufficient to promptly pay when due the interest on all such obligations and that portion of the principal thereof falling due before the time of the following year's tax collection;

"(b) An amount, if there be any outstanding term refunding obligations, sufficient to provide the sum required to be deposited, by the ordinance or resolution authorizing each such issue, into the sinking fund therefor prior to the time of the following year's tax collection; .

"(c) An amount, if there be any outstanding term obligations (other than refunding obligations), which if deposited annually into a sinking fund will, with the existing sinking fund pertaining thereto and the increment thereof, be sufficient to pay such obligations at maturity;

"(d) An amount, if any, required to be levied in such year for each principal and/or interest reserve:

"Provided, That the foregoing shall not be construed to limit the amount required to be levied in any year for the foregoing purposes, by the terms of any ordinance or resolution authorizing the issuance of such obligations.

"If at the time of making any annual tax levy, there be surplus moneys on hand for the payment of principal or interest, and no provision shall have been made in the bond resolution for the disposition thereof, then credit therefor may be taken upon such annual levy for principal or interest as the case may be.

"Any moneys remaining in a debt retirement fund or on account within such a fund after the retirement of all bonds payable therefrom shall remain in such fund for a period of 2 years after such retirement unless previous approval to transfer such funds shall have been authorized by the municipal finance commission: Provided, That such remaining moneys may be transferred within said 2 year period upon resolution of the governing body with prior approval of the municipal finance commission, regardless of the requirements of any other statute.

"To prevent a deficiency in the sinking fund available for the payment of any term bonds, the commission may from time to time prescribe an amount to be levied in excess of the amounts required by any law, charter, ordinance or resolution, in order that the principal of such term bonds may be paid when due, and the

commission may from time to time revise its determination in such regard.

"As taxes are collected there shall be set aside that portion of such collections which is allocable to the payment of the principal and interest on said obligations and the portion so set aside shall be divided pro rata among the various sinking funds and debt retirement funds in accordance with the amount levied therefor. All such tax collections paid into any such debt retirement fund shall, if such fund is for the payment of more than 1 issue of obligations, be allocated on the books and records of the municipality between the various issues in accordance with the amounts levied therefor. No limitation in any statute or charter shall prevent the levy and collection of the full amount of taxes required by this section for the payment of debts, but nothing herein shall authorize the levy of a tax for any other purpose exceeding the existing statutory or charter tax limitation. Any officer who wilfully fails to perform the duties required of him by this section shall be personally liable to the municipality or to any bondholder for any loss or damage arising from such failure."

This section has been interpreted as not requiring commission approval for the levy of taxes over charter limitations when necessary for the payment of bonded debt. OAG, 1945–1946, No 4379, p 608 (February 15, 1946).

The succeeding section of the Act, MCLA 137.1c; MSA 5.3188(45c), authorizes the commission to notify the county treasurer that a municipality's bonds are "retired or that the debt retirement fund is of sufficient amount to retire the bonds", whereupon the treasurer is no longer required to recognize a levy for the bond issue.

Given that specific authority and duty, it is not to be supposed that the commission is empowered to prevent the imposition or collection of a tax before the debt is retired or its retirement secured,

even though the commission may be of the opinion that the tax is not necessary to meet current debt service requirements.

Neither is there statutory authority for the county commissioners or the director of equalization to sit in judgment upon the purpose of a debt levy.

## THE ROLÈ OF THE COURTS

It is the duty of the courts to interpret the constitution and the laws.

It is also the function of courts to seek the truth, to decide in adversary proceedings, disputed questions of fact.

So, if a tax levy be legal and constitutional if imposed to pay the principal and interest on bonds, and illegal and unconstitutional if not imposed to pay the principal and interest on bonds, and the legality of the tax is challenged in a proper action, it is the duty of the court to decide the disputed question.

But the courts cannot undertake the task of deciding the validity of community college over-levies for debt service without some guidelines.[1]

Community college trustees, like all public officers, are presumed to act in accordance with the law. Moreover, they are elected to operate their community colleges, and the courts should presume that they have the requisite expertise to do what the voters have elected them to do. It is not

---

[1] In the argument of this cause, two similar cases at the circuits have been brought to our attention. In *Delta College v Foster,* 42nd Circuit, Midland County, No. 3777, June 20, 1972, Rood, J., the over-levy was permitted as a matter of right. In *Attorney General, ex rel, Wagonmaker v Muskegon Community College,* 14th Circuit, Muskegon County, No. C-5735, October 22, 1971, Schoener, J., held the over-levy invalid, absent a showing of necessity by the college.

for the courts to sit as a curriculum committee, or to decide the priorities of academic programs.

Neither should the trustees be obliged to carry the burden of proving that the desired over-levy is to pay debt service. The burden of proof should fall upon the opponents of the levy, to show that the non-voted millage is not in fact imposed for the purpose of paying debt service, but is, in reality and in spite of all presumptions to the contrary, an imposition, the principal thrust of which is to achieve some goal other than payment of debt service.

In so saying, we do not agree with the contention of the Attorney General that whenever the gross revenues of the community college are sufficient to pay debt service, no over-levy is permissible. The obligation of the trustees to operate the community college and achieve its educational purpose is their primary responsibility under the law and by virtue of their election.

In the case before us, there was a hearing on the merits. It was limited largely by stipulations of fact, in which the essential allegations of the plaintiff's complaint were conceded. A number of exhibits were admitted by stipulation.

The defendants called no witnesses. The plaintiff called only one, Dr. John M. Eaton, president of the community college. He testified that the trustees generally allocated one mill to operational expenses and one-half mill to debt service out of the voted one and one-half mill maximum levy.

In this context, Dr. Eaton testified further that the state requires one full mill be used from the local levy in order to receive state aid.

His reference would appear to be 1971 PA 121, § 8:

"Sec. 8. A community or junior college receiving an appropriation under this act and not collecting or allocating for the fiscal year ending June 30, 1972, the equivalent of 1 mill on the college district's state equalized valuation for college operation purposes shall forfeit state funds at a rate equal to 10% for each 2/10 of a mill less than 1 mill. The bureau of the budget shall decrease the monthly payment to community and junior colleges for noncompliance if compliance has not occurred by December 1, 1971."

Dr. Eaton also testified that debt service for "this year" (presumably the 1972 fiscal year) was $175,000, and that the one-half mill levy would produce approximately $100,000, leaving $75,000 to be raised. He testified that the .3 mill over-levy would produce about $62,000.

He further stated that approximately 80% or 90% of the one mill allocated for operations was fixed contractual expense, either salaries or "M. and O." costs. (Maintenance and overhead?)

Dr. Eaton attributed the community college's financial difficulties to a change in state law which required the college to pay for employee retirement and social security benefits;[2] to the effect of employee bargaining under the employment relations act of 1965; to a 3% retention of state aid[3] and to inflation.

There is no reference in the testimony or the opinion below to the fact that the state appropriation to the plaintiff West Shore Community College was increased from $289,875 in 1971 to $377,900 in 1972.

There was no testimony as to the actual amount of student fees.

While these factors may raise some question as

[2] The reference is to 1971 PA 121, § 10.

[3] As provided by 1971 PA 121, § 14, where state revenues fall below estimates.

to the propriety of imposing the .3 mill over-levy, they do not, in the absence of further proofs, preponderate in favor of the defendants.

Accordingly, we must remand for a new trial, at which the defendants shall be put to the burden of proving that the levy is not in fact imposed for the payment of debt service.

Being concerned about the problems inherent in litigation challenging non-voted millage, and being of the view that this is a legislative problem in the first instance, we are constrained to observe that an enactment reposing the duty of reviewing debt service tax levies in the State Board of Education, the State Board of Community Colleges, or some other appropriate state agency, would be a welcome addition to our statutes.

## REMAND

This cause is remanded to the circuit court for a new trial in accordance with this opinion.

Costs to abide the outcome.

T. M. KAVANAGH. C. J., and T. G. KAVANAGH, SWAINSON, WILLIAMS, LEVIN, and M. S. COLEMAN, JJ., concurred with T. E. BRENNAN, J.