DELTA COLLEGE v SAGINAW COUNTY BOARD OF
COMMISSIONERS

Docket No. 55587. Argued March 4, 1975 (Calendar No. 5).—Decided
December 18, 1975.

In 1968, plaintiff Delta College sought and obtained from the
electorate authorization to replace the 1958 millage of 1 mill
for debt retirement and 0.5 mill for operating expenses with an
unrestricted 1.5-mill levy pursuant to the Community College
Act of 1966 (MCLA 389.144; MSA 15.615[1144]). In 1972 plain-
tiff's board of trustees approved a levy of 1.62 mills composed of
1.30 mills for operating expenses and 0.32 mill for bond retire-
ment. The Saginaw County Board of Commissioners adopted a
resolution disapproving plaintiff's levy in excess of 1.5 mills,
and spread a levy of 1.5 mills. Plaintiff sought mandamus,
alleging that the defendant board of commissioners had a clear
legal duty to direct the assessing officers of Saginaw County to
levy taxes as certified by plaintiff. Defendant pled equitable
estoppel, alleging that plaintiff misled the voters into thinking
that no millage greater than 1.5 mills would be authorized. The
Saginaw Circuit Court, Joseph R. McDonald, J., denied the
writ. The Court of Appeals, Quinn, P. J., and Holbrook and
Peterson, JJ., reversed (Docket No. 15432). The Saginaw County
Board of Commissioners appeal. *Held:*

1. The clear legal duty of the board of commissioners to act,
necessary for mandamus, is found in the general property tax
law, which requires the board to direct that levies authorized
by law be spread on the assessment rolls. Since the 1972 levy of
plaintiff was authorized by Const 1963, art 9, § 6, and § 144 of
the Community College Act of 1966, the board of commissioners
had no discretion to refuse to spread the levy.

2. The remedy for a misleading ballot proposal is to void the
election as mandated by § 16 of the Community College Act of

REFERENCES FOR POINTS IN HEADNOTES

[1–7] 64 Am Jur 2d, Public Securities and Obligations §§ 58–62, 120,
440–453.

Validity, within authorized debt, tax, or voted limit, of bond issue
in excess permitted by law. 175 ALR 823.

[3, 5] 52 Am Jur 2d, Mandamus §§ 4, 33, 36.

1966 and § 4545 of the Revised Judicature Act; the defense of equitable estoppel may not be used to accomplish that result indirectly.

Affirmed.

Williams, J., concurred but wrote that the issue of the termination date of the 1968 levy was raised by the parties and should be resolved by the Court. The new tax rate was intended to have the same termination date as the old rate which it replaced and the doctrine of equitable estoppel applies to the representations made by the college in campaign literature which suggested that the termination date of the new levy would be the same.

### OPINION OF THE COURT

1. TAXATION—COMMUNITY COLLEGES—RATE—LIMIT—BONDS.

   Community colleges are authorized by statute to impose taxes without limit as to rate for the payment of principal and interest on bonds (MCLA 389.144[1]).

2. TAXATION—COMMUNITY COLLEGES—RATE—LIMIT—BONDS.

   A community college which had been authorized by the electorate to impose an unrestricted 1.5-mill levy was authorized by law to impose a levy of 1.62 mills composed of 1.30 mills for operating expenses and 0.32 mill for bond retirement, because the amount for bond retirement is not subject to the rate limitation (MCLA 389.144[1]).

3. TAXATION—LEVY—COMMUNITY COLLEGES—COUNTY BOARD OF COMMISSIONERS—MANDAMUS.

   The inquiry of a county board of commissioners when a community college seeks to impose a tax levy is limited to whether the levy is "authorized by law"; if the levy is authorized, the board has no discretion to refuse to spread it, and mandamus is the proper remedy to compel performance of its duty (MCLA 211.37).

4. TAXATION—COMMUNITY COLLEGES—LEVY—RATE—ELECTIONS—MISLEADING PROPOSAL—REMEDIES.

   The proper means to challenge an election when a ballot proposal for authorization of a tax rate for a community college is misleading is to bring a statutory action to void the election (MCLA 389.16, 600.4545).

5. TAXATION—LEVY—COUNTY BOARD OF COMMISSIONERS—MANDAMUS—DEFENSES.

   The defense of equitable estoppel on the ground that a ballot

proposal for authorization of a tax rate was misleading is not available in an action for mandamus against a county board of commissioners to compel spreading an authorized levy where the statutory procedure for voiding the election was not followed (MCLA 600.4545).

Opinion Concurring in Part and Dissenting in Part

Williams, J.

6. Taxation—Community Colleges—Tax Rate—Termination Date —Elections.

*A new tax rate authorized by electors for a community college was intended to have same termination date as the rate which it replaced where the language of the ballot stated that the new authorization "shall replace" the old authorization, there was no reference to a specific termination date on the ballot, and campaign literature in support of the new rate created the impression that no new termination date was intended by the community college trustees.*

7. Taxation—Community Colleges—Tax Rate—Termination Date —Elections—Misleading Proposal—Remedies.

*The doctrine of equitable estoppel should apply and an authorized millage for a community college should be held to terminate on the date suggested by representations made by the community college in campaign material for the taxation election, if the college did not intend that termination date but the public has relied on those representations.*

*Mellinger & Mahlberg,* for plaintiff.

*E. Brady Denton,* Prosecuting Attorney, and *Michael J. McNamee* and *Patrick M. Meter,* Assistants Prosecuting Attorney, for defendants Saginaw County Board of Commissioners and Saginaw County Clerk.

Amicus Curiae: Michigan Community College Association *(Chapekis & Chapekis, P. C.,* for Bay de Noc Community College; *Thomas & Delaney,* for Charles Stewart Mott Community College; *Dresser, Dresser & Marks* [by *John E. Oster],* for Glen Oaks Community College; *Santini, Jacobs,*

*McDonald & Slic,* for Gogebic Community College; *Domke, Marcoux, Allen & Beaman,* for Jackson Community College; *Stapleton-Adams, P. C.,* for Kalamazoo Valley Community College; *Jennings, Turkelson & Crawford, P. C.,* for Kirtland Community College; *Steven C. Small,* for Lake Michigan Community College; *Thrun, Maatsch & Nordberg,* for Lansing Community College; *Johnson & Wendt,* for Macomb County Community College; *Hughes, Trucks & Allen,* for Mid Michigan Community College; *William J. Braunlich, Jr.,* for Monroe County Community College; *Thrun, Maatsch & Nordberg,* for Montcalm Community College; *Cochran, Vander Ploeg, Collinge & Silky,* for Muskegon Community College; *Clark, Stroup, Brown, MacKenzie & Pointrer,* for North Central Michigan College; *Denison, Devine, Porter & Bartush,* for Oakland Community College; *Touma, Watson, Andresen & Nicholson,* for St. Clair County Community College; *Miller, Canfield, Paddock & Stone* [by *Wolfgang Hoppe],* for Schoolcraft College; *Phillipson & Boezman,* for Southwestern Michigan College; *Jackson & Lamb,* for Washtenaw Community College; *Miller, Canfield, Paddock & Stone* [by *George E. Bushnell, Jr.],* for Wayne County Community College; and *Leonard J. Gavigan,* for West Shore Community College).

T. G. KAVANAGH, C. J. Plaintiff college was organized under the Community College Act of 1955, 1955 PA 188, the predecessor of the Community College Act of 1966, MCLA 389.1 *et seq.;* MSA 15.615(101), *et seq.* In 1958 plaintiff sought and obtained its first grant of tax authority. The electorate approved a 20-year levy not to exceed 1 mill for debt retirement and not to exceed .5 mill for operating expenses.

In 1968 plaintiff sought and obtained from the

electorate authorization to replace the 1958 millage with an unrestricted 1.5-mill levy pursuant to § 144 of the Community College Act of 1966; MCLA 389.144; MSA 15.615(1144).

That section requires the board of trustees of each community college to seek authorization from the voters for any tax up to a maximum of 5 mills. However, that section also empowers the board of trustees to impose unlimited taxes for:

"the payment of principal and interest on bonds or other evidences of indebtedness or for the payment of assessments or contract obligations in anticipation of which bonds are issued * * * ." MCLA 389.144(1); MSA 15.615(1144)(1).

Until 1972 plaintiff's board of trustees did not authorize a levy exceeding 1.5 mills. In that year plaintiff's board of trustees approved a levy of 1.62 mills composed of 1.30 mills for operating expenses and .32 mills for bond retirement.

On September 12, 1972, defendant Saginaw Board of Commissioners adopted a resolution disapproving plaintiff's levy in excess of 1.5 mills. Defendant then spread a levy of only 1.5 mills.

Plaintiff filed a complaint for mandamus in Saginaw Circuit Court on September 26, 1972, which alleged that the defendant board of commissioners had a clear legal duty to direct the assessing officers of Saginaw County to levy taxes as certified by plaintiff.

Defendant in its answer pled the affirmative defense of equitable estoppel alleging that plaintiff misled the voters into thinking that no millage greater than 1.5 mills would be authorized.

The case was tried on October 2, 1972. At the trial the defendant asked the trial court to take judicial notice of the fact that plaintiff had circu-

lated misleading literature. The trial court declined to do so, but denied the writ anyway finding that the word "replace" as used in the ballot proposal did mislead the voters.

Plaintiff appealed to the Court of Appeals. Eighteen days after the trial defense counsel obtained from plaintiff copies of the literature alleged to have been misleading and attached that literature to the appellate brief.

The Court of Appeals reversed the trial court and held that the trial court erred in light of *West Shore Community College v Manistee County Board of Commissioners;* 389 Mich 287; 205 NW2d 441 (1973). We agree.

Defendants seek to distinguish *West Shore* on the basis of the remedy sought. The community college in *West Shore* sought a declaratory judgment that it was entitled to levy .3 mill to pay debt service, whereas the instant case is a proceeding in mandamus, which requires the showing of a clear legal duty.

That clear, legal and compulsory duty is found in Michigan's general property tax law MCLA 211.37; MSA 7.55:

"[The board of commissioners] shall direct that such of the several amounts of money proposed to be raised for township, school, highway, drain and all other purposes as shall be authorized by law, be spread upon the assessment role of the proper townships, wards and cities."

The board's inquiry is limited to the question of whether the levies are "authorized by law". If the board fails to exercise this duty, mandamus is the proper remedy to compel the same. *Robbins v Barron,* 33 Mich 123, 125 (1876). Since the 1972 levy of plaintiff was authorized by Const 1963, art

9, § 6 and § 144 of the Community College Act of 1966, the board of commissioners had no discretion to refuse to spread the levy.

Defendants' asserted defense of equitable estoppel is ordinarily available in mandamus cases. However, that defense may not be used to accomplish indirectly that which may only be accomplished directly, to wit, the voiding of an election. *Fulton Twp School Dist, Gratiot County, v School Dist No 4 Fractional, Essex Twp, Clinton County,* 302 Mich 566; 5 NW2d 467 (1942). In *West Shore,* too, the board of commissioners alleged that the ballot proposal was misleading. In response this Court said:

> "Where a ballot proposal is misleading, the remedy is to void the election. We are not asked to do that in this action. Therefore, we express no opinion as to whether a referendum to establish 'a maximum tax rate' is invalid in the absence of some reference to the power to levy taxes for the payment of principal and interest on bonds 'without limitation as to rate or amount'." 389 Mich 287, 297.

For further clarification we note § 16 of the Community College Act of 1966; MCLA 389.16; MSA 15.615(116) mandates the proper means to challenge an election held under the act:

> "Sec. 16. The general election laws, including the voting of absent voters, and *all laws of the state* relating to the hours for the opening and closing of the polls at elections and *for preserving the purity of elections and for preventing fraud and corruption shall govern all elections under this act so far as the same are applicable and not inconsistent with the provisions of this act.* "(Emphasis added.)

And § 4545 of the Revised Judicature Act of

1961; MCLA 600.4545; MSA 27A.4545 sets out the procedure to be followed in testing the validity of an election:

"Sec 4545. (1) An action may be brought in the circuit court of any county of this state whenever it appears that material fraud or error has been committed at any election in such county at which there has been submitted any constitutional amendment, question, or proposition to the electors of the state or any county, township, or municipality thereof.

(2) Such action shall be brought within 30 days after such election by the attorney general or the prosecuting attorney of the proper county on his own relation, or on the relation of any citizen of said county without leave of the court, or by any citizen of the county by special leave of the court or a judge thereof. Such action shall be brought against the municipality wherein such fraud or error is alleged to have been committed.

(3) After such action is brought the procedure shall conform as near as may be to that provided by law for actions for quo warranto."

Since the procedure for voiding the 1968 election was not followed by the Saginaw Board of Commissioners their legal duty is clear. They must spread the levy as authorized by the Delta College Board of Trustees.

We remand to the trial court for determination of a levy on property not heretofore charged as authorized by the plaintiff which will produce the sum that would have been produced by payment of the levy requested in 1972, mandamus shall issue to enforce such levy.

Affirmed. No costs, a public question being involved.

LEVIN, FITZGERALD, and COLEMAN, JJ., concurred with T. G. KAVANAGH, C. J.

LINDEMER and RYAN, JJ., took no part in the decision of this case.

WILLIAMS, J. *(concurring in part, dissenting in part)*. This case poses two issues for the Court's consideration. First, we must decide whether in an action for mandamus to compel the spreading of a tax authorized by statute and a vote of the electorate of the Delta College District in 1968, the affirmative defense of equitable estoppel is available to challenge the validity of the 1968 election where it appears that plaintiff misled the electorate through the wording of the ballot proposal and through its campaign literature. I concur with my Brother KAVANAGH's judgment that the defense of equitable estoppel is not available for that purpose in the circumstances of this case, and that a writ of mandamus must issue.

Second, the parties raise the issue of when the 1968 millage authorization is to terminate. The 1968 millage authorization is to terminate in 1978, as asserted by defendant-appellant Saginaw County Board of Commissioners.

## I—FACTS

In May of 1958, appellee Delta College won approval from the electorate of the Delta College District of a grant of tax authority allowing a levy of up to one mill for debt retirement and up to .5 mill for operating expenses, for a period of 20 years.

The stricture that no more than .5 mill of the 1.5 mills authorized be allocated to operating expenses apparently was felt to be too limiting and inflexible by Delta College as the size of the school and its operating expenses grew in the 1960's, for in 1968, Delta launched a campaign to "replace"

the 1958 millage authorization with an "unrestricted" millage grant of 1.5 mills which, it was said, would cost the electorate no more in taxes while providing the college the flexibility it needed in budgetary matters. The fact that the new grant of tax authority would "replace" the 1958 millage grant was emphasized strongly in the campaign in support of the new grant.[1] Moreover, the ballot proposal specifically stated that the new authorization would "replace the authorization voted May 27, 1958".

Similarly, the campaign literature in support of the new authorization repeatedly emphasized that the new authorization would cost no more than the 1958 authorization of 1.5 mills. These assurances went so far as to include a chart presenting sample calculations of the "Total Delta Tax" under the proposed millage authorization. These calculations of the "total" tax used a 1.5-mill levy.[2] Significantly, this campaign literature also stated that the new unrestricted authorization would be used for debt retirement as well as operating expenses, and building and equipment costs.

In November of 1968, the proposition authoriz-

---

[1] This idea appeared on each piece of campaign literature which was presented to us. See Appellant's Supplemental Exhibits 1 and 2.

[2] An excerpt from one of the pieces of campaign literature supporting the new authorization reads as follows:

"4. What will it [the new authorization] cost me?

| Market Value Of Your Property | State Equalized Valuation | Total Delta Tax |
|---|---|---|
| $2,000 | $1,000 | $1.50 |
| $4,000 | $2,000 | $3.00 |
| $6,000 | $3,000 | $4.50 |
| $8,000 | $4,000 | $6.00 |
| $10,000 | $5,000 | $7.50 |
| $20,000 | $10,000 | $15.00 |
| $30,000 | $15,000 | $22.50 |

"For the State Equalized Valuation of your property contact your county tax collector."

ing the new millage was approved by the electorate of the Delta College District, and in April of 1972, appellee Delta College gave notice to Appellants Saginaw County Board of Commissioners that that same electorate should be taxed at a rate of 1.62 mills in 1972. One and three-tenths mills was to go for operating expenses, and .32 mills for bond retirement.

In September of 1972, appellant board of commissioners adopted a resolution disapproving any levy in excess of 1.5 mills, and authorized a levy up to 1.5 mills only.

Two weeks thereafter, appellee Delta College initiated an action for mandamus to compel appellant to spread and assess a total mill tax of 1.62 upon the assessment rolls of Saginaw County. Appellant board of commissioners responded with the affirmative defense of equitable estoppel alleging that plaintiff misled the voters into thinking that no millage greater than 1.5 mills would be levied under the 1968 authorization. On October 2, 1972, Judge Joseph R. McDonald of the Saginaw County Circuit Court refused to issue a writ of mandamus, dismissing the action by summary judgment.

The Court of Appeals reversed the lower court judgment on January 21, 1974, and ordered a remand for entry of a writ of mandamus.

This Court granted leave on June 24, 1974.

A key fact, nowhere mentioned in the ballot proposal or the 1968 millage campaign, helps illuminate the instant controversy. In 1966, under new authority granted by the Michigan Constitution of 1963, the Legislature enacted the Community College Act of 1966 which empowered the board of trustees of each community college to levy a tax as pertinently follows:

"Sec. 144. (1) The board of trustees of each community college district may levy * * * a tax which shall not exceed the rate which has been heretofore or is hereafter authorized by the qualified electors of the district * * * . The funds may be used for any and all purposes authorized *except that the foregoing limitation shall not apply to taxes imposed for the payment of principal and interest on bonds or other evidences of indebtedness* or for the payment of assessments or contract obligations in anticipation of which bonds are issued, *which taxes may be imposed without limitation as to rate or amount. * * * "* MCLA 389.144; MSA 15.615 (1144). (Emphasis added.)

Appellee Delta College relies on precisely this statutory authorization to tax beyond the rate approved by the electorate where the tax imposed is for the retirement of debt, to justify its demand for a 1.62 levy.

## II—TERMINATION OF THE 1968 MILLAGE AUTHORIZATION

While the validity of the 1968 millage authorization is no longer subject to challenge, for reasons outlined by my Brother Chief Justice KAVANAGH, we think it clear that the authorization terminates in 1978, the year that the 1958 authorization would have terminated. The voters in the 1968 election were apparently never explicitly informed either in the ballot proposition itself, or in the campaign literature whether the new authorization would terminate in 1978 or would continue indefinitely. However, an examination of the ballot language and the campaign literature indicates that the 1978 termination date is the most reasonable interpretation.

The ballot language in the 1968 election read as follows:

"Shall the Board of Trustees of Delta College, Counties of Bay, Midland and Saginaw, Michigan, a public community college of the State of Michigan, be authorized to levy a tax on the real and tangible personal property within the College District not to exceed the annual rate of one and one-half mills on each dollar ($1.50 on each $1,000.00) of the assessed valuation of such property as state equalized in the manner and for the purposes provided by Section 144 of Act 331 of the Public Acts of the State of Michigan of the year 1966 as amended, *which authorization shall replace the authorization voted May 27, 1958?"* (Emphasis added.)

The fact that the ballot language states that the new authorization "shall *replace* the authorization voted May 27, 1958" (emphasis added), coupled with the absence of any reference to a specific termination date, suggests that it was intended that the new authorization was to take on the termination date of the 1958 authorization.

This interpretation is certainly consistent with the impression created by Delta in the campaign literature supporting the new authorization. For example, the campaign literature invariably emphasized that the new authorization would mean no increase in the 1958 millage authorization, as the following excerpts make clear:

"5. Will this new authorization cost more than the original 1958 authorization?

"NO! This authorization only replaces the original authorization."

*    *    *

"WHAT ARE WE ASKING FOR?

*Replace* 1958 millage with 1-1/2 mills *unrestricted.* THERE WOULD BE NO INCREASE FROM THE ORIGINAL AUTHORIZATION."

*    *    *

"WHAT ARE WE ASKING FOR?

In 1958, 1-1/2 mills was voted.

This amount was *Restricted*

    1 mill for building

    1/2 mill for operating.

In 1968, we are asking you to *replace* the *restricted* 1958 with 1-1/2 mills *unrestricted.*

This means *no increase* in authorization.

A YES vote means NO INCREASE in authorization."

Yet clearly, replacing a 1.5 mill tax for a limited period of years with a 1.5 mill tax for an indefinite period of time *would* constitute an increase in the millage authorization.

Moreover, a reading of Delta's campaign literature creates the impression that the new authorization would have one, and only one, effect: to increase the flexibility of Delta's budgeting by lifting the restrictions on the 1958 authorization. Nowhere in the campaign literature before us is it indicated that a change in the 1978 termination date was desired.

Consequently, it would seem clear that Delta College said and intended that the new authorization was to take on the 1978 termination date of the 1958 authorization.

We therefore conclude that the ballot language of the 1968 referendum substituted an unrestricted 1.5-mill tax for the restricted 1958 tax, terminating in 1978.

Furthermore, if such were not the intent of the referendum, then Delta College is guilty once again of misleading the public in the 1968 election. While we have concluded that the defense of equitable estoppel is not available to challenge the validity of the 1968 election because of the exclusivity of the quo warranto procedure, no such problem arises in applying the doctrine of equita-

ble estoppel to the issue of when the 1968 authorization is to terminate.

The central principle of equitable estoppel is that one who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. *Holt v Stofflet,* 338 Mich 115, 119; 61 NW2d 28 (1953). If Delta College did not intend that the 1968 authorization take on the 1978 termination date, then its representations to the electorate were false and misleading, and the public has relied on those misrepresentations. Under the doctrine of equitable estoppel, we will not allow Delta to breach the expectations of the public on this issue.

My Brother Chief Justice KAVANAGH does not resolve the issue of the termination date of the 1968 authorization, apparently because he does not feel the issue was sufficiently raised by the parties. I disagree.

In both its brief and in oral arguments, the board of commissioners clearly asserted that the termination date of the 1968 authorization was 1978. The parties' argument on this issue centered on the meaning of the phrase "which authorization shall replace the authorization voted May 27, 1958?", which appeared in the 1968 ballot proposal. Delta argued in both its brief and in oral arguments that this phrase meant that the 1958 authorization was repealed. This would imply that the 1978 termination date would no longer have effect. The board of commissioners argued that the phrase meant that the 1968 authorization was intended to incorporate the 1958 authorization's termination date and 1.5-mill limitation, changing the earlier authorization only by lifting the restric-

tion on how the 1.5 mills could be spent. See appellants' brief, pp 10–11.

The effect of avoidance of the termination date issue would be to unnecessarily require the parties to litigate this issue at some future date. The issue was raised and should be resolved.